**FIRST NATIONAL BANK OF CINCINNATI, Appellant, v. EVATT, Tax Commissioner, Appellee.**

Board of Tax Appeals.

No. 7451. Decided July 23, 1945.

592

Messrs. Ernst, Cassatt and Cottle, Cincinnati, on behalf of the appellant.

Hon. Hugh S. Jenkins, Atty. Genl. of Ohio and Daronne R. Tate, Assistant Atty Genl., on behalf of the appellee.

## ENTRY

This cause came on to be heard upon the appeal of First National Bank of Cincinnati from the final order of the tax commissioner denying appellant's. application for a review and redetermination of an additional tax assessment made against it as a financial institution for the year 1942. This cause was heard and submitted upon the transcript of the

proceedings before the tax commissioner, the evidence and the brief of counsel for the appellant.

Appellant claims that the tax commissioner erred in including in the amount of taxable deposits which it had on listing day, November 5, 1941, the deposits of The Cincinnati, New Orleans and Texas Pacific Railway Company and The Procter & Gamble Defense Corporation herein after referred to as The Defense Corporation. The contention of the appellant is that a large portion of the deposit of the railway company was used in and arose out of business transacted outside of Ohio. However, no evidence was introduced in support of this contention and, therefore, the action of the tax commissioner in this respect must be affirmed.

As to the deposits of the Defense Corporation, the appellant claims its said deposits are not withdrawable and that they were used in and arose out of business transacted in Tennessee. No claim is now made that the Defense Corporation is an instrumentality of the United States.

The evidence shows the following: The Defense Corporation is an Ohio corporation with its principal office in Cincinnati. It operated a shell loading plant in Milan, Tennessee, where it carried on all its manufacturing business and where it had a manager who was in charge of the plant. All of its officers and directors were located in Hamilton County, Ohio. The administrative and accounting office was in Cincinnati where the treasurer was responsible for the custody and accounting of all the funds of the Defense Corporation. Said corporation had two deposits with the appellant denominated as a special account in the sum of $611,695.90 and a special account No. 2 in the sum of $53,094.93. These deposits resulted from advances made from time to time to the Cincinnati office by the United States Government. These advances were first deposited in the special account and when checks were drawn upon the appellant the money necessary therefor was transferred to special account No. 2 and the checks were paid from the latter account so that the balance in this account was always the amount of outstanding checks drawn on the appellant. The Defense Corporation also had a bank account in New York City. All the expenses of the Milan plant were thus paid from these accounts. All purchases and invoices therefor were approved by the government at the Milan plant; and when approved the checks therefor were prepared at Milan and sent to Cincinnati where they were signed and then returned to Milan for delivery to the persons from whom the purchases were made. All wages and salaries of employes at Milan were paid from the

deposits in appellant's bank. All salaries and wages of its officers and employes at the Cincinnati office were paid by The Procter & Gamble Company, which was reimbursed by the Defense Corporation by checks drawn on the New York bank.

Under the provisions of §5412 GC, the amount of the taxable deposits of the appellant as a financial institution, as well as the value of its taxable shares, is required to be assessed in its name as such financial institution. Sec. 5406 GC, likewise relating to the taxation of financial institutions, provides, with certain exceptions not here material, that the deposits required to be returned by financial institutions "include all deposits as defined by §5324 GC, to the extent that such deposits are made taxable by §5328-1 GC". Sec. 5328-1 GC, is a declaratory statute with respect to the taxation of intangible property, and provides that all moneys, credits, investments, **deposits,** and all other intangible property of persons residing in this state shall be subject to taxation, except as is otherwise provided in this section or in the title of the General Code of which this section is a part. Sec. 5324 GC, provides as follows:

"The term 'deposits' as so used, includes every deposit which the person owning, holding in trust, or having the beneficial interest therein is entitled to withdraw in money, whether on demand or not, and whether evidenced by commercial or checking account, certificate of deposit, savings account or certificates of running or other withdrawable stock, or otherwise, excepting (1) unearned premiums and surrender values under policies of insurance, and (2) such deposits in financial institutions outside of this state as yield annual income by way of interest or dividends in excess of four per centum of the principal sum so withdrawable."

Appellant claims that the deposits here in question do not constitute "deposits" for purposes of taxation, as this term is defined in §5324 GC. As to this, the Board is of the opinion that the fact that checks were not drawn on these deposits by the Defense Corporation until the items purchased by it and the invoices therefor were approved by the government, does not make them nonwithdrawable deposits. So far as the relation between the Defense Corporation and the appellant bank is concerned, the Defense Corporation was entitled to withdraw such deposits in money. In other words, these deposits and the action of the Defense Corporation

in making the same, gave rise to the oridinary relation of debtor and creditor, as between the appellant bank and the Defense Corporation, such as is incident to bank deposits generally. And this view is not changed or otherwise affected by the fact that these deposits were made by the Defense Corporation for the specific purpose of paying therefrom the expenses incurred by it in operating its shell loading plant at Milan, Tennessee. **Squire, Supt. of Banks, v Oxenriter, 130 Oh St 475; Squire, Supt. of Banks, v American Express Company, 131 Oh St 239, 249; Merchants & Mechanics Federal Savings & Loan Assn. v Evatt, Tax Commr., 138 Oh St 457, 465.** Moreover, this view as to the debtor and creditor relation between the appellant bank and the Defense Corporation as to these deposits is in nowise affected by the fact that such deposits were of moneys advanced to the Defense Corporation for this purpose by the Federal Government. **First-Central Trust Company v Evatt, Tax Commr., 145 Oh St 160, 168.**

Assuming without further discussion that the deposits here in question had the character of "deposits" for purposes of taxation within the definitive provisions of §5324, GC, the question still remains as to whether such deposits were made taxable by the provisions of §5406 GC and of other related sections of the General Code therein referred to. In this connection, it is pertinent to note that by a provision enacted by way of Amendment of §5406 GC, effective under date of August 20, 1943, there were excepted from the class of deposits which financial institutions are required to return for taxation "deposits to the extent of advances or advance payments made under any contract entered into by the Federal Government or any instrumentality thereof for the production of materials or supplies or the furnishing of services pursuant to authority of any act to further the war effort". Obviously, however, no retroactive effect can be given to this present provision of §5406 GC, with respect to the question of the taxability of the deposits of the Defense Corporation here in question which, if taxable were required to be listed for the tax year 1942 as of November 5, 1941; and this provision is without significance otherwise than as a legislative recognition of the view that but for such provision deposits of this kind would be required to be returned for taxation. However this may be, the question of the taxability of these deposits as against the appellant bank must be determined on a consideration of the provisions of §5406 GC, and related sections of the General Code as they read on and as of said tax listing day with respect to taxable de-

posits for the tax year 1942. Under the provisions of §5406 GC, the appellant bank as a financial institution was required to return for taxation only such deposits as were made taxable by §5328-1 GC. Under the provisions of §5328-1 GC, the deposits here in question made in the appellant bank by the Defense Corporation—a corporation organized under the laws of Ohio, and by legal intendment a resident of this state—must be held to be taxable unless such taxability is negatived by the provisions of this or of some other section of the General Code in their application to the facts of this case. As to this, §5328-1 GC, provides: "All moneys, credits, investments, deposits, and other intangible property of persons residing in this state shall be subject to taxation, excepting as provided in this section or as otherwise provided or exempted in this title." This section further provides, generally, that intangible property of the kinds and classes mentioned in §5328-2 GC, (including deposits) used in and arising out of business transacted in this state by, for or on behalf of a nonresident person, shall be subject to taxation; and more specifically to the point, so far as this case is concerned, this section of the General Code further provides as follows: "And all such property of persons residing in this state used in and arising out of business transacted outside of this state by, for or on behalf of such persons, * * * shall not be subject to taxation." Sec. 5328-2 GC, in so far as the same is here applicable, provides:

"Property of the kinds and classes herein mentioned, when used in business, shall be considered to arise out of business transacted in a state other than that in which the owner thereof resides in the cases and under the circumstances following: * * *

"In the case of deposits (other than such as are used in business outside of such other state), when withdrawable in the course of such business by an officer or agent having an office in such other state; but deposits representing general reserves or balances of the owner thereof, maintained for the purpose of his entire business wherever transacted, shall be considered located in the state wherein the owner resides, if an individual, or wherein its actual principal executive office is situated, if a partnership or association, or under whose laws it is organized, if a corporation, by whomsoever they may be withdrawable."

In connection with the statutory provisions above noted it may be pertinent to note the provisions of §5325-1 GC,

defining the term "used in business" with respect to the taxation of tangible and intangible personal property. Touching the question here presented this section provides:

"Moneys, deposits, investments, accounts receivable and prepaid items, and other taxable intangibles shall be considered to be 'used' when they or the avails thereof are being applied, or are intended to be applied in the conduct of the business, whether in this state or elsewhere."

Tested by the provisions of this section of the General Code, it is quite clear that the deposits here in question were at the time used in business in a state other than Ohio; and the only other question with which we are now concerned is whether such deposits can be considered "to arise out of business transacted in a state other than that in which the owner thereof resides". In this connection it is noted that under the provisions of §5328-2 GC, above quoted, deposits shall be considered to arise out of business transacted in a state other than that of the owner's residence when the same are "withdrawable in the course of such business by an officer or agent having an office in such other state". Construing the provisions of §§5328-1 and 5328-2 GC, in their application to the question of the taxable situs of the deposits of a foreign corporation in an Ohio bank, the Supreme Court of this state in its opinion in the case of **Kettering, Inc. v Evatt, 144 Oh St 419, 425,** indicated the view that such deposits had a taxable situs in Ohio when they are used exclusively in business transacted in this state and are, likewise, withdrawable by an officer or agent having an office in this state. The view expressed in the opinion of the Court in the case above cited leads to the further view that inasmuch as the deposits here in question were not withdrawable by any officer or agent of the Defense Corporation other than by certain designated officers and agents having their office in Cincinnati, Ohio, such deposits cannot be said to arise out of business transacted in another state, within the meaning of the above quoted provisions of §5328-2 GC, and that such deposits, therefore, are not excluded from taxation in this state. Touching this question the Supreme Court of Ohio in the case of **Ransom & Randolph Company v Evatt, 142 Oh St 398, 404** said:

"Sec. 5328-2 GC, (115 Ohio Laws, 555), in fixing business situs provides that where *deposits* are used in business outside of such other state or where such **deposits** are not withdrawable by an officer or agent having an office in such other

state, such **deposits** have a business situs at the residence of the taxpayer."

Inasmuch as these deposits had a business situs in Ohio they were taxable in this state, The Ransom & Randolph Company v Evatt, supra; and for this reason, as well as on the more comprehensive view that there is no statutory provision which in its application to the facts of this case excepts these deposits from taxation as the property of the Defense Corporation, a resident of this state, the order of the tax commissioner complained of in this appeal is affirmed.